FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 02, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROY D. CHEESMAN,<br>    Plaintiff,<br>    v.<br>DETECTIVE JENNIFER MARGHEIM, CORPORAL JASON BRUNK, and OFFICER LUCAS ANDERSON,<br>    Defendants. | No. 1:18-CV-03017-SAB |
| RUTH ANNE CONDE CHEESMAN,<br>    Plaintiff,<br>    v.<br>DETECTIVE JENNIFER MARGHEIM, JIM WEED,<br>    Defendants. | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Before the Court are Defendants' Motion for Summary Judgment, ECF No. 47; Plaintiffs' Motion Demand Right to a Jury Trial, ECF No. 57; Plaintiffs' Motion to Strike, ECF No. 59; and Plaintiffs' Pleading for Court Permission to Respond Defendants' Reply in Support of Summary Judgment, ECF No. 61. A hearing on the motions was held on February 19, 2020. Plaintiffs represented themselves at the hearing and Defendants were represented by Kirk A. Ehlis.

Plaintiffs are suing police officers of the Ellensburg Police Department who had various interactions with them. Most of their claims are directed at

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JDUGMENT ~ 1**

Detective Jennifer Margheim with respect to her investigation into allegations surrounding Plaintiff Roy Cheesman's alleged abuse of his children.

## Motion Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JDUGMENT** ~ 2

constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (citation omitted).

Where the defense of qualified immunity is at issue, the Court applies a two-part inquiry to 42 U.S.C. § 1983 claims. *Burke v. Cnty. of Alameda*, 586 F.3d 725, 731 (2009). The Court asks whether the defendants' actions violated the Constitution, and whether the right violated was clearly established. *Id.* Courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand. *Pearson,* 555 U.S. at 236.

Under the qualified immunity analysis, a "clearly established right" is one that is sufficiently clear that every reasonable officer would have understood that what she is doing violates the right. *Mullenix v. Luna*, __ U.S. __, 136 S.Ct. 305, 307 (2015). "To determine whether a right was clearly established, a court turns to Supreme Court and Ninth Circuit law existing at the time of the alleged act." *See Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 967 (9th Cir. 2010). It is not necessarily that a case is directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citing *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011)). Simply put, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quotation omitted).

//

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JDUGMENT ~ 3**

## State Law Immunity

State employees enjoy qualified statutory immunity for reporting child abuse:

> (1)(a) Except as provided in (b) of this subsection, any person participating in good faith in the making of a report pursuant to this chapter or testifying as to alleged child abuse or neglect in a judicial proceeding shall in so doing be immune from any liability arising out of such reporting or testifying under any law of this state or its political subdivisions.

Wash. Rev. Code § 26.44.060(1)(a).

The burden is on the employee to prove that she acted in good faith under RCW 26.44.060 in reporting the abuse. *Dunning v. Pacerelli*, 63 Wash.App. 232, 240 (1991). An officer enjoys qualified common law immunity for investigating child abuse. *Babcock v State*, 116 Wash.2d 596, 618 (1991) To receive this qualified immunity, the officer must (1) carry out a statutory duty, (2) according to procedures dictated by statute or superiors, and (3) act reasonably. *Id*.

## Facts

On September 25, 2015, Defendant Jason Brunk was dispatched to The Green Shelf in Ellensburg, Washington. The owner of the store spoke with Officer Brunk. She explained that Mr. Cheesman had come into the store, became upset that her products were so expensive and began yelling at employees and customers. He also threw products from the shelf. The owner asked Officer Brunk to trespass Mr. Cheesman from the store. Officer Self, who is not a defendant in this action, went to the Cheesman residence and told Mr. Cheesman that he was trespassed from the Green Shelf and if he returned to the store, he could be arrested.

On November 19, 2016, Defendant Lucas Anderson was dispatched to the Cheesman residence in response to a report from Mr. Cheesman's neighbor, Keven Burke, that Mr. Cheesman was taking down his fence. Officer Anderson spoke to the neighbor and Mr. Cheesman. Because the ownership of the fence

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JDUGMENT** ~ 4

was unclear, he concluded this was a civil matter and Officer Anderson left the premise.

On December 7, 2016, Officer Anderson was against dispatched to the Cheesman residence. This time, Mr. Cheesman called to complain that his neighbor, Michael Perisho, who was shooting birds. He had come out of his front door holding an air rifle, although Mr. Cheesman said that Mr. Perisho never pointed the air rifle at him or his house. Mr. Cheesman showed Mr. Anderson several locations on his outer wall where he stated Mr. Perisho had shot the Cheesman house with his air rifle. Officer Anderson looked at the damage but did not think it was caused by an air rifle. Rather, it looked like damage from a larger blunt style object.

In speaking with Mr. Perisho, Officer Anderson learned that Mr. Perisho was sneaking into his backyard so he could shoot a woodpecker that had been damaging his house. Mr. Perisho explained that he does not shoot random birds; rather he just scares birds that are damaging his house. Officer Anderson concluded that Mr. Perisho's conduct was not criminal activity and he closed the case.

On the same day, Plaintiffs' daughter, L.C., who was five at the time, went to school. She had been absent the day before. At some point in the morning, her teacher, Tia Ross, noticed some puffiness around her eye and some slight bruising on the outer edge. She asked L.C. what happened, and L.C. explained that she fell asleep in the chair and somehow hit the chair. Ms. Ross let it pass. Later that afternoon, Ms. Ross asked her again what happened. At that point, L.C. said, "my Dad hit me and hit my sister…two times and then he felt bad, so he put medicine on my eye." Ms. Ross reported this conversation to the school counselor.

The school counsel then told the principal, John Graf, who told the counselor to call Child Protective Services (CPS). CPS indicated the school

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JDUGMENT** ~ 5

needed to decide whether to call law enforcement, given the previous interactions with Plaintiff Roy Cheesman.[1] Mr. Graf eventually called the school resource officer. Mr. Graf also took three pictures of L.C.'s face. In the process he asked L.C., "Oh, Sweetie, what happened to your eye?" She immediately replied, "My dad got angry and hit me." She also mentioned that her big sister had gotten into trouble because she had gotten L.C. some ice. She indicated her dad smacked her big sister for getting the ice. School officials let L.C.'s father, Plaintiff Roy Cheesman, take her daughter home after school.

The next day, on December 8, 2018, Detective Margheim received an intake from Child Protective Services (CPS) regarding Plaintiffs' daughter, L.C. The intake form relayed that Nancy Wilbanks was concerned about L.C. because L.C. had been absent from school the prior day and when she returned, she had a bruised right eye that was swollen and purple in color. Ms. Wilbanks said that L.C. had stated that her dad, Plaintiff Roy Cheesman, hit her.

Detective Margheim went to Lincoln Elementary School and met with L.C. She immediately noticed bruising in and around her eye. She took four photographs of L.C.'s right eye. CPS Investigator Tabitha Snyder was also present. During the interview, L.C. gave conflicting statements about what happened. At first, she stated she was watching TV, flipped the chair, fell asleep and "bumped herself." In response to a follow-up question, she responded that her dad hit her and her sister, V.C.

Officer Ryan Shull assisted Detective Margheim with the CPS referral. On the same day, he interviewed L.C.'s siblings, V.C. and I.C., at Ellensburg High School. He first spoke with V.C., who did not want the conversation recorded. She stated that she did not witness the incident regarding L.C.'s eye, but she

---

[1] Defendants indicate they knew that Plaintiff Roy Cheesman had a history of yelling at staff and was quick to escalate conflict.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JDUGMENT ~ 6**

heard her parents talking about L.C. hitting her eye on the dining room table. She did tell Officer Shull that she was fearful of her father because he "gets upset a lot." She stated that when he gets angry, he hits her, her siblings and her mother. She said that he had hit her in the past, including the previous evening. She explained that she gets hit multiple times per week. She said she was scared to tell Officer Shull more because she might get hit by her dad for doing so.

Officer Shull then spoke with I.C. He also said that he did not witness the incident regarding L.C.'s eye but heard that she hit her head on the dining room table. He told Officer Shull that he and his father get into frequent fights and his dad has a history of hitting him. Because of this, his older brother moved out of the family home. He shared that his dad had hit him two or three weeks prior. He said that he saw his dad hit V.C. four to six years ago, and he never seen him hit L.C., although he stated that his dad is often angry at them. He shared that he does not feel safe around his father.

Detective Margheim called Defendant Jim Weed and asked him about placing Plaintiffs' minor children in protective custody. She relayed what she had learned from interviewing the children. Mr. Weed agreed that the children should be placed in protective custody. Subsequently, he called the Cheesman residence and spoke with Mr. Cheesman. He informed him that he would be arrested if he presented himself at Lincoln Elementary School to pick up L.C.

Detective Margheim took all three of Plaintiffs' children into protective custody and signed them over to CPS Investigator Snyder.

John Graf, Lincoln Elementary School principal, asked the Ellensburg Police Department to trespass Mr. Cheesman from school grounds. Officer Anderson was dispatched to the school and Mr. Graf explained that Mr. Cheesman had called him about Mr. Graf's taking L.C.'s photograph and accused him of doing so for sexual purposes. He stated he feared Mr. Cheesman would attempt to enter school premises in response to Mr. Cheesman's kids going into

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JDUGMENT** ~ 7

protective custody. Officer Anderson called Mr. Cheesman and explained the nature of the trespass notice. Mr. Cheesman said that he understood.

Detective Margheim also referred the matter to the Kittitas County Prosecutor. Kittitas County Superior Court found that probable caused existed and issued a summons to Mr. Cheesman. The criminal case filed against Mr. Cheesman was dismissed on December 11, 2017. The dependency petition was also ultimately dismissed.

## Analysis

### 1. Claims against Defendant Jason Brunk

Summary judgment is appropriate on any claims asserted against Defendant Brunk. Plaintiffs have not presented any facts that Officer Brunk violated their constitutional rights.

### 2. Claims against Defendant Lucas Anderson

Summary judgment is appropriate on any claims asserted against Defendant Lucas Anderson. Plaintiffs have not presented any facts that Officer Anderson violated their constitutional rights.

### 3. Claims against Defendant Jim Weed

In her Complaint, Plaintiff Ruth Ann Conde Cheesman asserts that Defendant Jim Weed violated Plaintiff's constitutional rights to bring and get a second opinion of medical examination of L.C. She also complained that Defendant Weed allowed CPS to bring L.C. to the emergency doctor. Finally, she alleges that Defendant Weed make a verbal threat that informed Mr. Cheesman that if the child will be picked up from Lincoln Elementary School, he would be arrested.

According to Mr. Weed's declarations, the only thing he did was confer with Defendant Margheim and call Mr. Cheesman to trespass him from the School.

//

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JDUGMENT ~ 8**

Plaintiffs have not alleged facts that establish that Defendant Jim Weed violated their constitutional rights. Moreover, even if he violated their constitutional rights, those rights are not clearly established. It is not clearly established that a parent has a constitutional right to obtain a second medical examination, nor is it clearly established that Defendant Week should have prevented CPS from taking their children for a medical examination. Finally, it is not clearly established that calling a parent to inform them that they would be arrested if they came to the school would violate the parents' constitutional rights. As such, Defendant Jim Weed is entitled to qualified immunity on the claims asserted against him by Plaintiffs.

### 4. Claims against Defendant Jennifer Margheim

Plaintiffs are alleging that Defendant Margheim violated their constitutional rights and are asserting various state law claims against Defendant Margheim.

### a. Fourth Amendment Unreasonable Seizure

Plaintiffs alleged Defendant Margheim violated their Fourth Amendment rights against unreasonable seizure.

It is undisputed that Defendant Margheim interviewed L.C. outside the present of her parents. While an argument could be made that L.C. has Fourth Amendment rights to be free from interrogations at school by police officers, her parents do not. Moreover, even if Plaintiffs were able to convince the Court that they have a Fourth Amendment right with respect to their child's interrogation at school, that right is not clearly established under Supreme Court and Ninth Circuit law existing at the time of the alleged act. *See Rabinovitz v. City of Los Angeles*, 287 F.Supp.3d 933, 947 (9th Cir. 2018) (reviewing caselaw and determining that "law enforcement's authority to detain and interview—in a private area on a school campus—a minor who is a suspected victim of child abuse, without a warrant or court order or presence of exigent circumstances, is

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JDUGMENT ~ 9**

undecided."). As such, Defendant Margheim is entitled to qualified immunity on this claim.

### b. Substantive Due Process – Decision to Take Children into Protective Custody

Plaintiffs allege that Defendant Margheim violated their substantive due process rights by taking the children into protective custody

Parents and children have a well-elaborated constitutional right to live together without governmental interference. *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000). "That right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency." *Id.*

"Officials may remove a child from the custody of its parent without prior judicial authorization only if the information they possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." *Id.* "Serious allegations of abuse that have been investigated and corroborated usually give rise to a 'reasonable inference of imminent danger sufficient to justify taking children into temporary custody' if they might again be beaten or molested during the time it would take to get a warrant." *Rogers v. Cnty of San Joaquin*, 487 F.3d 1288, 1294–95 (9th Cir. 2007).

A reasonable jury would not find that Defendant Margheim violated Plaintiffs' due process rights. On the one hand, the school officials permitted L.C. to return to the home on December 7, 2016, and when she returned to school the next day, there was no reports of additional bruising that would evidence further abuse, suggesting that L.C. may not have been in imminent danger of serious bodily injury. On the other hand, on December 8, 2016, Office Shull learned from V.C. that her father had hit her the previous night. ECF No. 53. This is

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JDUGMENT** ~ 10

direct evidence that if the children were returned to the home, they were in imminent danger of serious bodily injury at the hands of Plaintiff Roy Cheesman. A reasonable jury could only come to one conclusion, namely, that there was imminent danger of serious bodily injury and removing the children from the home was reasonably necessary. As such, summary judgment on this claim is appropriate.

### c. First Amendment

Plaintiffs have not delineated the basis for their First Amendment claim, except to cite to *Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003). Plaintiffs' reliance on this case is misplaced. That case held that parents who send their children to private schools manifest a subjective expectation of privacy in the premises of the school. *Id.* at 512. Case law has not identified a subjective expectation of privacy in the premises of a public school. Moreover, to the extent that parents have reasonable expectation of privacy that their children's picture will not be taken at school without their consent, such a right was not clearly established at the time Defendant Margheim took L.C.'s picture. As such, Defendant Margheim is entitled to qualified immunity on Plaintiffs' First Amendment claims.

### d. False Accusations

Plaintiffs argue Defendant Margheim made false accusations against Plaintiff Roy Cheesman. At best, Plaintiffs have provided self-serving denials of what L.C. told Defendant Margheim. It is undisputed that Plaintiffs were not present during the interview. The transcript reveals that L.C. gave conflicting accounts of how she received the black eye. Also, it is undisputed that L.C. had a black eye and the only question was how she got it. It was reasonable for Defendant Margheim to rely on the statements made by L.C., V.C. and I.C. to conclude that it was probable that Plaintiff Roy Cheesman had hit L.C. hard enough to give her a black eye.

//

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JDUGMENT** ~ 11

### e. Negligent Investigation

Plaintiffs allege that Defendant Margheim conducted a negligent investigation into how L.C. obtained her black eye. Washington law imposes a duty to investigate child abuse in limited circumstances. *Rodriguez v. Perez*, 99 Wash. App. 439, 443 (2000); *see also* Wash. Rev. Code § 26.44.050. "By specifically including parents, custodians, and guardians of children 'within the class of persons who are foreseeably harmed by a negligent investigation into allegations of child abuse[,]' the Legislature has recognized a duty to the parent as well as the child in conducting child abuse investigations." *Id.* (citation omitted). The *Rodriguez* court concluded that parents could bring a negligent investigation claim against law enforcement. *Id.* at 449 ("Holding law enforcement agencies to a standard of negligence in child abuse investigations should not have the effect of chilling those investigations. Rather, such a standard will encourage careful, thorough investigations, which support the public policy of protecting children from child abuse while at the same time preventing unwarranted interference in the parent-child relationship.").

Here, a reasonable jury would not find that Defendant Margheim acted negligently in investigating whether Plaintiffs' children were being abused by Mr. Cheesman. She took statements from three school officials, interviewed the victim herself and recorded the interview, observed the injury and asked for assistance from Officer Shull, who interviewed the older high school age children. She then sought out a second opinion from Defendant Jim Weed. To the extent she was negligent in interviewing L.C. without her mother present, she is entitled to immunity. She has established that she was carrying out her statutory duties, following the procedures dictated to her by her superiors, was acting in good faith and acted reasonably.

As such, summary judgment on this claim is appropriate.

//

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JDUGMENT** ~ 12

### f. Intentional Infliction of Emotional Distress

Plaintiff alleges that Defendant Margheim committed the tort of Intentional Infliction of Emotional Distress. To state a claim under Washington law for Intentional Infliction of Emotional Distress, the plaintiff must show that the emotional distress was inflicted intentionally or recklessly; mere negligence is insufficient. *Waller v. State*, 64 Wash. App. 318, 336 (1992). Second, the defendant's conduct must be "outrageous and extreme." *Id.* Tortious or criminal intent, or malice will not suffice. Liability arises only when the conduct is:

> "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Id.*

Notably, in *Waller*, the Washington court held that even if it is shown that caseworkers may have been grossly negligent in choosing to believe allegations of child abuse and in not choosing to thoroughly investigate the alleged abuser's claims, their conduct cannot be characterized as going "beyond all possible bounds of decency. *Id.* In that case, although substantial evidence eventually showed that the allegations were not credible, the caseworkers' opinions were supported in part by expert opinions of therapists. *Id.* The court concluded that their conduct could not be said to have been outrageous. *Id.*

Here, a reasonable jury would not find that Defendant Margheim acted beyond all possible bounds of decency in investigating and concluding that Mr. Cheesman hit L.C. and gave her a black eye. As such, summary judgment on this claim is appropriate.

### g. Libel/Slander

Plaintiffs' claims for libel and slander against Defendant Margheim fail as a matter of law. Defendant Margheim is afforded immunity with respect to her statements in the police report. *See Bender v. City of Seattle*, 99 Wash.2d 582,

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JDUGMENT** ~ 13

601 (1983); *see also Spurrell v. Bloch*, 40 Wash. App. 854 (1985) (written reports defendants made regarding plaintiffs' children and condition of their home did not give rise to cause of action for defamation, as the persons rendering such reports, including school nurse, and police officer, were protected by §26.44.060.)

There is no evidence in the record that Officer Margheim knew any information that she wrote in her police report was false, or recklessly disregarded the falsity of any alleged statement. There was no reason to suspect that the teachers or the Cheesman children were not telling the truth. A reasonable jury would not find for Plaintiffs' on this claim. As such, summary judgment is appropriate.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JDUGMENT** ~ 14

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment, ECF No. 47, is **GRANTED**.
2. Plaintiffs' Motion to Strike, ECF No. 59**, is DENIED.**
3. Plaintiffs' Motion Demand Right to a Jury Trial, ECF No. 57, is **DENIED**, as moot.
4. Plaintiffs' Pleading for Court Permission to Respond Defendants' Reply in Support of Summary Judgment, ECF No. 61, is **DENIED**, as moot.
5. The District Court Executive is directed to enter judgment in favor of Defendants and against Plaintiffs.

**IT IS SO ORDERED.** The Clerk of Court is directed to enter this Order, forward copies to Plaintiffs and counsel, and **close** the file.

**DATED** this 2nd day of March 2020.



Stanley A. Bastian
United States District Judge

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JDUGMENT ~ 15**